FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 29 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
OMRI PERETZ,

               Plaintiff,

     -against-

THE HOME DEPOT INC., NORTHERN TOOL
& EQUIPMENT CO., EMERSON ELECTRIC
CO., d/b/a RIDGID, SAINT-GOBAIN
ABRASIVES, INC.,

               Defendants.
------------------------------------------------------------ X

**MEMORANDUM
DECISION AND ORDER**

08-cv-4106 (BMC)

**COGAN, District Judge.**

This is a diversity products liability suit brought by the plaintiff, who alleges that he was injured while using a "Rigid" brand angle grinder, sold by defendant, The Home Depot, Inc. ("Home Depot"), during the course of his employment as a locksmith.[1] Plaintiff asserts claims for negligence and strict liability. Presently before the Court is defendant Home Depot's motion in limine to strike the report and testimony of the expert that plaintiff has designated for trial. For the reasons set forth below, the motion is granted.

## BACKGROUND

The accident at issue in this case occurred on July 20, 2008, when plaintiff was injured while attempting to open a safe at a Kentucky Fried Chicken ("KFC") restaurant in Connecticut with a Rigid seven-inch angle grinder. The previous day, plaintiff had purchased the grinder as well as flat cutting discs to use with the grinder from defendant Home Depot, allegedly on the recommendation of one of its sales associates. Plaintiff maintains that by using a flat cutting

---

[1] Defendants Northern Tool & Equipment Co., Emerson Electric Co. and Saint-Gobain Abrasives, Inc. were previously dismissed from the action per the parties' stipulations.

disc, rather than a recessed cutting disc, the nut which attached the flat disc to the grinder's recessed flange placed too much pressure on the disc, causing it to break and fly off the grinder. The cutting disc broke apart and pieces struck the back of plaintiff's left wrist and lower forearm, slicing his tendon.

On May 1, 2008, plaintiff served the report of his liability expert, Robert Kopelman. The crux of Mr. Kopelman's proposed testimony is that the angle grinder sold by Home Depot was defective because: (1) the guard on the grinder was permitted to move out of place while it was in use; and (2) the grinder should never have been able to accept a flat disc. Home Depot now moves to strike the expert report and proffered testimony of Mr. Koppelman pursuant to Fed. R. Evid. 702.[2]

## DISCUSSION

### I. Controlling Principles

Expert testimony must be evaluated in accordance with Fed. R. Evid. 702, which states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 imposes a two-fold analysis on the trial court. First, the court must determine whether the proposed witness is qualified as an expert. Fed. R. Evid. 702; Baker v.

---

[2] On August 11, 2009 the Court granted plaintiff's motion for an extension of time to file papers in opposition to defendant's motion to strike, but cautioned counsel that "if the submission materially expands or revises the expert report or deposition, preclusion or a sanction will likely be the result." The reason for this limitation was to avoid prejudice to defendant. Defendant had taken the deposition of plaintiff's expert, reviewed the expert report, and moved in limine against it. To allow plaintiff to greatly expand the substance of the expert's opinion after the close of discovery could have made defendant's efforts for naught. Nevertheless, although plaintiff's submission materially expands Mr. Koppelman's report, because I am granting defendant's motion without requiring further submission or action, I decline to impose sanctions.

2

Urban Outfitters, Inc., 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003). If the court is satisfied that the proposed witness does indeed qualify as an expert, then the court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 2799 (1993). The burden of establishing the admissibility of the proffered expert testimony weighs on the proponent of that testimony. See Humphrey v. Diamant Boart, Inc., No. 06 Civ. 2771, 2008 WL 413801 (E.D.N.Y. Feb. 13, 2008) (collecting authority). "Though the weight given to expert testimony should be left to the finder of fact, expert testimony should be excluded altogether if it is 'speculative' or 'conjectural' or if it is based on assumptions 'so unrealistic and contradictory as to suggest bad faith.'" Baker, 254 F. Supp. 2d at 353 (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)). Moreover, courts are not required to admit expert opinion evidence that is "connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997).

Although a full evidentiary hearing is often needed to address Daubert issues, such hearing is unnecessary if the objections to the expert testimony can be decided on written submission. Colon v. BIC USA, Inc., 199 F. Supp. 53, 71 (S.D.N.Y. 2001) ("Nothing in Daubert, or any other Supreme Court or Second Circuit case, mandates that the district court hold a Daubert hearing before ruling on the admissibility of expert testimony..."). In addition, the parties here have consented to this Court's ruling based on the affidavits, briefs, and deposition and report of the expert, without the need for an evidentiary hearing. I find these submissions sufficient to render a decision.

## II. Plaintiff's Proposed Expert: Robert Kopelman

### A. *Qualifications*

The qualification of experts falls within the broad discretion of the trial court, see Stagl v. Delta Air Lines, Inc., 117 F.3d 76 (2d Cir. 1997), which need not preclude an expert from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute. See, e.g., id. (reversing trial court's preclusion order despite the fact that the expert had no experience designing the specific kind of system at issue); Lappe v. Am. Honda Motor Co., Inc., 857 F.Supp. 222, 226 (N.D.N.Y. 1994) ("[i]n a product liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization affects the weight of the opinion, not its admissibility") (citation omitted).

However, the expert must have relevant experience and qualifications such that whatever opinion he will ultimately expresses would not be speculative. See Quintilla v. Komori Am. Corp, No. 04 Civ. 5227, 2007 WL 1309539 (E.D.N.Y. May 4, 2007) (engineer with no experience with printing presses *or* with design of machine guarding, but with experience in mechanical design for the electronics industry was not qualified to testify as expert on design of printing presses concerning lack of safety interlocks or hand guards); Barban v. Rheem Textile Sys., Inc., No. 01 Civ. 8475, 2005 WL 387660 (E.D.N.Y. Feb. 11, 2005) (engineer who had never designed a machine of any kind *and* had no experience in the dry cleaning business was not qualified to testify that the design of a dry cleaning machine was inherently dangerous).

Home Depot argues that Mr. Kopelman lacks relevant training and basic education in engineering and therefore does not have sufficient knowledge of power tools or grinders to present competent expert testimony. Mr. Kopelman has a 2-year degree in construction architecture but has not studied mechanical engineering. His five year electrician's

4

apprenticeship did not involve the study of engineering at all. Home Depot further argues that Mr. Kopelman is an electrician by background and work experience and has never designed, manufactured, or sold machinery and has never formulated warnings for grinders or handheld machinery of any kind. Home Depot asserts that Kopelman has limited association with any of the relevant professional societies and limited knowledge of any of the relevant professional safety standards, underscoring the fact that at his deposition Mr. Kopelman was "not sure" if there were any standards that apply to the formulation and layout of warnings. In sum, Home Depot complains that Kopelman's body of work is limited to electrical projects, construction work and contracting, not the design and sale of power tools.

Plaintiff maintains that Mr. Kopelman has been qualified as an expert in power tools and machinery, large and small. Plaintiff submits that in his 43 years as an electrician, Kopelman has had extensive experience working with and supervising workers with grinders like the one in this case. Plaintiff avers that Kopelman has been qualified as an expert in over 20 cases and identifies a number of factually similar cases.[3] Mr. Kopelman indicates that he has supervised hundreds of workers using grinders in his electrical work. While Mr. Kopelman's affidavit leaves no doubt that he has *used* angle grinders in his extensive and varied experience as an electrician, there is far less evidence indicating that he has knowledge of how to safely design or evaluate them.

Nonetheless, while Mr. Kopelman has never designed a grinder, he explains that he has developed a related electric tool, a slicer, which makes use of the guard safety technology at issue here. He has also developed a temperature safety feature which has similar attributes to

---

[3] I put little if any stock in the fact that Mr. Kopelman has been previously qualified by other courts. Plaintiff has failed to give sufficient details regarding this testimony. It is unclear, for example, whether Mr. Kopelman has testified in federal court. See Fed. R. Civ. P. 26(a)(2)(B)(v) (requiring an identification of specific cases in which the expert has testified).

safety mechanisms utilized on competing grinders. Mr. Kopelman is currently a consultant for the Institute for the Manufacturing Research Department of Mechanical Engineering Technology at the State University at Farmingdale and runs his own electrical safety consulting company.

I find Mr. Kopelman to be sufficiently qualified to offer his opinion as an expert, albeit barely. His use of grinders in his electrical, construction and contracting work combined with his development of safety features for related power machinery suggests that he could competently testify about the alleged defective aspects of the grinder in question. As the cases above demonstrate, an expert need not have experience with the particular product at issue. And it is well-settled that, to be an expert, a person need not hold a particular license or degree. Johnson & Johnson Vision Care, No. 04 Civ. 7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006) (explaining that a witness can qualify as an expert based solely on practical experience, and not educational experience). The important point is that the product at issue has sufficient similarities to those with which the expert has worked and had experience developing so that the expert's experience is relevant. Bah v. Nordson Corp., No. 00-CV-9060, 2005 WL 1813023 (S.D.N.Y. Aug. 1, 2005). Based on his offered qualifications and experience, Mr. Kopelman can render a competent opinion on the angle grinder. Mannix v. Chrysler Corp., No. 97-CV-1944, 2001 WL 477291, at *1 (E.D.N.Y. Mar. 4, 2001).

*B. Admissibility of the Proposed Testimony*

Mr. Kopelman's qualification to testify does not end the inquiry, however. Once the court is satisfied that a proposed witness does qualify as an expert, then the court must determine whether the scientific or technical testimony provided by that expert is both relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999); Daubert, 509 U.S. 579, 113 S.Ct. 2786. In pertinent part, Fed. R. Evid. 702 states that a qualified expert may testify "in

the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

The Second Circuit has described the general methodology to be employed by trial courts in conducting Rule 702 analyses. See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256 (2d Cir. 2002). First, the trial court should determine "whether proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. at 265 (internal quotations omitted). Next, the court should determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." Id. (internal quotation, citation omitted). The trial court possesses "broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." Id.

These criteria are not exhaustive. See Wills v. Amerada Hess Corp., 379 F.3d 32 (2d Cir. 2004). Daubert enumerated a list of additional factors bearing on reliability that district courts may, but are not required to, consider: (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) the technique's "known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. See Daubert, 509 U.S. at 593-94, 113 S.Ct. at 2796-97.

For expert testimony on design defects, the expert must offer feasible alternative designs and establish that the hypothetical designs would have resulted in greater safety to the end user *in*

7

*the...accident at issue.* Zaremba v. General Motors Corp., 360 F.3d 355 (2d Cir. 2004); Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) (excluding an expert who never attempted to reconstruct the accident and test his theory of safer design).

It is in the emphasized language that Kopelman's proffered testimony fails.

Mr. Kopelman asserts that the alleged injury to plaintiff could have been prevented if the grinder sold by Home Depot had:

> (1) the safety design for his electric slicer, which was patented in 1998, and uses a pin locking mechanism to prevent the guard from moving;
> (2) his patented over temperature protection safety feature;
> (3) a distortion resistant guard that is used on other grinders; or
> (4) a spindle designed so that the clamp nut could not be installed with a flat disc.

Mr. Kopelman explains why he believes the offered alternative designs would prevent injury, generally, but offers no data, models, calculations or drawings[4] showing how the alternative designs would have resulted in greater safety for the plaintiff *in this specific accident*. In his deposition, Mr. Kopelman testified that he knew the plaintiff was attempting to cut into a safe at a KFC when the accident occurred and estimated its size, but indicated that he never made any efforts to go to KFC or obtain an exemplar of the safe. Mr. Kopelman never concretely applied his proposed safety design ideas to the particulars of this case. Thus, the alternative designs provided in Mr. Kopelman's affidavit are insufficient, not only because they significantly expand the scope of Mr. Kopelman's original testimony and report – strictly prohibited by this Court's August 11 Order – but because they are opinions that have not been subjected to any reliable testing to establish their superiority with respect to the specific circumstances at issue in this case.

---

[4] I find Mr. Kopelman's sketches of his electric slicing tool, from 1995, to be of very limited probative value.

In fact, Mr. Kopelman suggested in his deposition that he conducted only three tests in connection with this litigation: (1) he manipulated the guard on the grinder involved in the accident; (2) he bought a blade that "appeared" to be the same blade that was in the grinder when the accident happened; and (3) he had the RPMs of the grinder checked at a motor shop to determine its speed. Mr. Kopelman is familiar with accident reconstruction yet concedes that no such reconstruction occurred here. While Mr. Kopelman visited "some stores on Long Island" and took pictures of grinders, he did not visit the Home Depot where the grinder was purchased. His review of relevant materials was limited to the Rigid grinder's manual, plaintiff's deposition transcript, the relevant OHSHA standard and a casual look on the internet at other manuals and grinding wheels. He did not conduct any further market research to determine how other grinders are designed, manufactured and sold.

Based on the foregoing efforts, I am left to conclude that Mr. Kopelman's proffered testimony is not based on scientific or technical methodology, but rather, on his own examination and manipulation of the machinery at issue, his inspection of photographs of similar products and his speculation as to why plaintiff's accident occurred and what types of safety mechanisms would have prevented it. This does not demonstrate the reliability required under Rule 702. See Zaremba, 360 F.3d at 359 (holding that it was not enough for an expert to testify that his hypothetical alternative design would generally have been safer).

Furthermore, plaintiff's expert has satisfied none of the four reliability factors set forth in Daubert: (1) Kopelman has not tested his theory of the accident or alternative designs; (2) he has not subjected it to peer review or publication; (3) his design does not have a "known rate of error," since it has not been tested; and (4) he has not shown general acceptance of his methodology in reaching his conclusions. 509 U.S. at 597. The failure to satisfy these criteria or

to demonstrate a formal, re-testable methodology in this case is not dispositive. See Kumho Tire, 526 U.S. at 1171 ("Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case.") But it is emblematic of the fundamental infirmity in Mr. Kopelman's proffered testimony; it is based on his subjective belief, not actual knowledge or specific testing. The proponent of expert testimony bears the burden of showing "a grounding in the methods and procedures of a science which must be based on actual knowledge and not subjective belief or unaccepted speculation." Smith v. Herman, Inc., No. CV-03-5358, 2005 WL 207657, at *2 (E.D.N.Y. Aug. 26, 2006). Plaintiff has failed to meet that burden.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
September 25, 2009