FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 20 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
OMRI PERETZ,

         Plaintiff,

    - against -

THE HOME DEPOT INC., EMERSON
ELECTRIC CO. d/b/a RIDGID and SAINT-
GOBAIN ABRASIVES, INC.,

         Defendants.
------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

08 Civ. 4106 (BMC)

**COGAN**, District Judge.

  This is a diversity personal injury suit in which plaintiff alleges that he was injured while using a power tool and attachment, both sold to him by defendant, The Home Depot, Inc. ("Home Depot").[1] The complaint originally asserted claims for strict products liability and negligence. However, by prior Order, this Court excluded the testimony of plaintiff's expert as to the alleged defects in the products for its failure to meet the requirements for expert testimony under Fed. R. Evid. 702 as explained in Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 2799 (1993). Plaintiff thereupon voluntarily dismissed his strict liability claim, leaving only his negligence claim.

  Home Depot now moves for summary judgment dismissing the remaining negligence claim on the ground that plaintiff cannot make out a prima facie case without the use of expert testimony. I deny the motion for the reasons set forth below.

---

[1] Defendants Northern Tool & Equipment Co., Emerson Electric Co. and Saint-Gobain Abrasives, Inc. were previously dismissed from the action per the parties' stipulations.

# BACKGROUND

Plaintiff is a professional locksmith. According to his version of the facts, which must be presumed true for purposes of this motion, he was hired to open a safe at a fast food restaurant. Initially, he purchased a 4 ½ inch "grinder" from Home Depot to cut through the safe, but it was insufficient. He therefore went back to Home Depot to exchange it for something that could cut through the safe. He asserts that he approached a salesman and described what he needed; the salesman recommended a "Ridgid" brand 7-inch angle grinder. Plaintiff then asked the salesman for blades that could be used with the grinder to cut through the safe, and the salesman recommended a flat "Norton" brand cut-off wheel. It is uncontested that this advice, if given, was wrong; although the Norton cut-off wheel can be safely used to cut metal, it is not suitable or intended to be used with an angle grinder like the Ridgid.

Plaintiff maintains that by using a flat cutting wheel, rather than a recessed cutting wheel, the nut which attached the flat wheel to the grinder's recessed flange placed too much pressure on the wheel, causing it to break and fly off the grinder. Plaintiff also contends that the grinder's guard was only intended to be used with a grinding wheel, not a cut-off wheel that is intended to be used with a circular saw, so it could not adequately protect plaintiff. When plaintiff attempted to use the Ridgid grinder with the Norton wheel, the wheel broke apart and pieces struck the back of plaintiff's left wrist and lower forearm, slicing his tendon.

# DISCUSSION

## I. The Standard for Summary Judgment

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his or her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

Although the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences against the moving party, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rely on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). The relevant substantive law will identify the facts that are material for purposes of summary judgment. Anderson, 477 U.S. at 248.

Finally, "[t]hough courts are hesitant to grant summary judgment in negligence cases, 'the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment.'" Smith v. N.Y. Enter. of Am. Inc., No. 06 Civ. 3082, 2008 WL 2810182 (S.D.N.Y. July 21, 2008) (quoting Hood v. Regency Mar. Corp., No. 99 Civ. 10250, 2000 WL 1761000 (S.D.N.Y. Nov. 30, 2000)).

**II. Expert Testimony in Negligence Cases**

Defendant asserts that plaintiff's failure to offer expert testimony is fatal to three aspects of his prima facie case: (1) whether and to what extent a duty exists between a retailer and a customer concerning advice given to the customer; (2) whether that duty was breached; and (3) whether any breach of the duty was the cause of plaintiff's injury. I hold that the record contains sufficient evidence to permit a jury to determine these issues.

As the Supreme Court has noted:

> [E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation ..."

Salem v. U.S. Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122 (1962) (quoting United States Smelting Co. v. Parry, 166 F. 407, 411, 415 (8th Cir. 1909). In this diversity action, the question of whether or not expert testimony is required to prove negligence is a question of New York State law. Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 27 (1st Cir. 2006). New York courts have held that expert testimony is often necessary to prove malpractice by a medical professional. E.g., Gibson v. D'Amico, 97 A.D.2d 905, 470 N.Y.S.2d 739 (N.Y. App. Div. 1983). New York courts have similarly held that expert opinion is generally necessary to

evaluate the standard of care owed by other kinds of professionals, except where the jury is otherwise competent to evaluate whether the defendant has deviated from the standard of care. See 530 East 89 Corp. v. Unger, 43 N.Y.2d 776, 402 N.Y.S.2d 382 (1977) (architects); Gertler v. Sol Masch & Co., 40 A.D.3d 282, 835 N.Y.S.2d 178 (N.Y. App. Div. 2007) (accountants); 470 Owners Corp. v. Heimer, 258 A.D.2d 558, 685 N.Y.S.2d 747 (N.Y. App. Div. 1999) (engineers); Greene v. Payne, 197 A.D.2d 664, 602 N.Y.S.2d 883, 885 (N.Y. App. Div. 1993) (attorneys).

Although retail salespeople undoubtedly receive some training before being released to the sales floor, and without meaning to denigrate the essential role they play in our society, it is too big a stretch to equate them with professionals in determining whether a jury needs expert testimony to reach a conclusion concerning an appropriate standard of care. Jurors have either worked as or dealt with retail salespeople throughout their lives, and can be expected to have the ability to determine what a reasonable level of care is without the need for an expert. Indeed, as the Supreme Court suggested of the proposed naval architecture expert in Salem, it is not clear that a retail sales "expert" could render testimony that would be helpful to the jury on the issue of whether salespeople have a duty to give accurate information concerning the compatibility of products that the store sells. The existence and scope of a duty between salesperson and customer is well within the common daily experience of jurors.

Even in cases involving specialized trades, expert testimony on the standard of care is not invariably required. In Pearce v. Feinstein, 754 F. Supp. 308 (W.D.N.Y. 1990), for example, the plaintiff sued a hospital for injuries sustained from a defective catheter despite the hospital having received recall notices for the catheter from its manufacturer. The hospital sought judgment notwithstanding the verdict in the plaintiff's favor based on the plaintiff's failure to offer expert testimony on the standard of care, but the Court denied the motion:

> Defendant's suggestion that the field of materials management is so specialized as to require expert testimony could apply with equal force to any industry, and is tantamount to stating that a jury requires expert testimony on supermarket management in order to assess whether a banana peel left on the floor of the produce section is unsafe. A jury can, and in this case did, decide on the basis of common experience that a hospital acts unreasonably in failing to ensure that materials it furnishes for physicians' use have not been recalled because of known defects.

Id. at 311.

Similarly, in <u>Adorno v. Correctional Services Corp.</u>, 312 F. Supp. 2d 505 (S.D.N.Y. 2004), the plaintiff sued the private prison facility in which she was housed, alleging negligence in retaining a prison guard who sexually abused her, and contending that the defendant had notice of prior sexual misconduct by the prison guard. The court rejected the defendant's contention that an expert was required "concerning the standard(s) of care that [the defendant] was responsible for and how [the defendant] departed from those standards." Id. at 514. It held instead that "a lay juror could reasonably determine without expert testimony that [the defendant] should not have retained [the prison guard]" if the defendant "had been placed on notice that he had engaged in sexual misconduct ... under the circumstances alleged here." Id. at 515.

The same reasoning applies here. It is well within the realm of common experience among jurors to determine the existence and scope of the duty owed between customer and salesperson. A defendant would be free, if it wishes, to offer evidence or argument that in light of the number or complexity of products that it sells, it would be unreasonable to expect sales people to be trained to accurately answer product compatibility questions, but a jury would be

readily able to determine the weight or persuasiveness of such evidence or argument. No expert is needed to educate jurors on a matter so firmly within their own life experiences.[2]

Having concluded that expert testimony is not required to determine the existence or scope of the duty here, it follows *a fortiori* that jurors are also capable of determining whether that duty was breached. The facts here, once determined by the jury, coupled with its conclusion on the standard of care, will permit only one of two possible answers. If the jury accepts plaintiff's testimony that an unidentified salesperson told him that the Ridgid grinder could be used with the Norton wheels, and finds that Home Depot owed a duty not to give erroneous advice on the compatibility of these products, then it will also find that Home Depot breached that duty. If, on the other hand, the jury rejects plaintiff's testimony concerning what the unidentified salesperson told him, or if it concludes that any duty Home Depot owed did not encompass giving accurate advice on these products under the circumstances, then it will find no breach of the duty.

The question of whether plaintiff needs to present expert testimony as to causation is closer. Causation here is a matter of some technical complexity. This is evident from plaintiff's theory of the case as stated in its brief in opposition to the instant motion:

---

[2] Home Depot contends that the scope of any duty of care would have to take into account the fact that plaintiff is a professional locksmith who the record shows had considerable experience using grinders and grinding wheels. I disagree. Plaintiff's experience goes to the issue of comparative negligence, on which Home Depot would be free to introduce expert or other evidence. It would not affect the standard of care or its breach unless, perhaps, Home Depot could also show that the unidentified salesman knew of plaintiff's experience and took it into account in recommending the Ridgid grinder and Norton wheels. Home Depot has not suggested that it has any such evidence.

There may be circumstances in which a plaintiff's knowledge of the products, their risk, and the fact that he was using them improperly so vastly overshadow any duty owed by the retailer that the breach of that duty is not viewed as the proximate cause of the accident. That was the situation in Troncoso v. Home Depot, U.S.A., Inc., 258 A.D.2d 644, 685 N.Y.S.2d 797 (N.Y. App. Div. 1999), upon which Home Depot relies. Based on the summary judgment record, I view it as a jury question as to whether plaintiff's experience and knowledge reach that level, but I might revisit the issue upon a full trial record if the jury finds in plaintiff's favor.

7

> By using a flat "cut off wheel" which did not have a recessed center, the nut
> which attached the flat wheel to the grinder's recessed flange placed too much
> pressure on the disc causing it to break and fly off the grinder, injuring the
> plaintiff. Further, the Ridgid grinder's guard failed to protect the plaintiff from
> the flying disc as the guard was only intended to be used with a grinding wheel,
> not a "cut off wheel" that was intended for use with a circular saw.

If plaintiff sought to rely only on his description of how the accident occurred, I would agree with defendant that plaintiff had failed to make out a prima facie case. Plaintiff's theory of the case requires too much technical knowledge to be within the ability of the average juror to accept without speculation.

However, the case comes before me in a peculiar procedural posture. In previously seeking to blunt plaintiff's product liability claim, Home Depot and St. Gobain Abrasives, Inc., ("St. Gobain") the manufacturer of the Norton cut-off wheel (St. Gobain was a defendant but plaintiff voluntarily dismissed it), each offered a witness to show that the accident was the result of plaintiff's decision to use an incompatible cut-off wheel with the grinder, not any defect in either product, despite the presence of very strong warnings on both products not to use them together. In doing so, these witnesses described in considerable detail how the products interacted and what went wrong that led to the accident. By excluding defects in the products and focusing instead on the chain of events stemming from the products' incompatibility, they furnished a sufficient factual basis for the jury to reach a conclusion as to causation. Cf. Basciano v. Reinecke, 313 F.2d 542, 544 (2d Cir. 1963) ("if a defect in the plaintiff's case is cured by the evidence introduced by the defendant, defendant is not permitted to disregard that evidence and rely upon the inadequacy of the plaintiff's case").

Thomas H. Service, Ph.D., P.E., who is Manager of World Safety for St. Gobain, delivered a report and testified at deposition concerning the interaction of the grinder and cut-off wheel. His deposition testimony, taken prior to his designation as an expert, all but concluded

8

that the accident occurred from the incompatibility of the grinder and cut-off wheel, and his report expressly described how this occurred:

> While this [grinder and cut-off wheel] mounting system works well for a grinding wheel with a depressed center it can lead to this type of accident when used with a flat cut-off wheel. When the flat cut-off blade is tightened with the clamp nut, the center portion of the blade is distorted axially into the depression on the black flange. This causes significant bending stress in the blade that it was never designed to withstand. ... The blade likely cracked upon initial installation and then propagated during use until fracture.

Similarly, in his deposition, Dr. Service testified that "this [cut-off] wheel was mounted and used in an application that it should not have, in that it was mounted on a depressed center flange, and when it was tightened and used, the center pushed out and caused this circumferential fracture that you see here."

Charles D. Winchester, the Manager of Product Safety for the company that distributes the Ridgid grinder to Home Depot, while not familiar with the Norton cut-off wheel, offered complimentary testimony describing how the accident likely occurred. Having inspected the particular grinder and broken wheel at issue, he concluded that "it would not be proper" to use the Ridgid grinder with the Norton cut-off wheel and that doing so would make it "more prone to break" in such a "misused situation." Mr. Winchester was asked how he thought the accident occurred, and while again disclaiming particular knowledge of the cut-off wheel, he concluded that the blade had broken off from the grinder:

> Most likely for a break to occur like that would be misuse, or misuse in the person using it maybe twisting the product, I could see it putting stress on the blade and breaking it, or just misuse by using a cut-off wheel on an unintended product like using it on a grinder like this.

When further asked why a break would be less likely to occur with a grinding wheel than a cutting wheel, Mr. Winchester testified:

9

> On a grinding – with a grinding wheel, you're typically grinding on a metal
> surface usually anywhere from zero to ten-degree angle. The guard is located
> where the user would be. The underneath side is typically guarded by the surface
> that's being grinded which acts as a guard. So you're not – you're only grinding
> on the face not on the edge of the grinding wheel (indicating).
>
> Q: As you saw in the cut-off, you'd be grinding the edge?
>
> A: Yes.

Based on this testimony, it does not seem to me that plaintiff needs additional evidence to demonstrate causation. His theory of causation is that the Home Depot salesman misled him into thinking he could turn the grinder on its side like a circular saw and use a cutting attachment, trying to slice through metal, when in fact the Ridgid grinder was meant to be used as an automated piece of round sandpaper, flat against a metal object with a bump or protrusion to be sanded down. Because these devices were not meant to be used in that combination, the cutting-wheel broke, injuring him. In fact, although the question of how the accident occurred will be for the jury to determine, I do not think there is much dispute that this scenario demonstrates the cause of the accident.

I recognize the irony that Home Depot, in seeking to defeat plaintiff's strict products liability claim and show that the accident was the result of plaintiff's misuse, has brought forth presented sufficient evidence of causation to warrant submitting the issue to the jury. Home Depot may take some solace in the fact that its original aim, to show that plaintiff, as a professional locksmith familiar with grinders, should have known that he could not have used the grinder like a circular saw, and that there were express warnings on both products expressly cautioning against such use, may yet be accepted by the jury and overshadow the alleged advice that plaintiff received from the unidentified Home Depot salesman (if the jury finds that such advice was, in fact, received). But on the narrow issue of whether the jury can understand and

reach a conclusion on causation without additional expert testimony, I think it quite clear that the jury can. It is going to be up to the jury to decide whether the accident is attributable to plaintiff's own negligence, the alleged advice he received from the Home Depot salesperson, or some combination of the two.

## CONCLUSION

Defendant's motion for summary judgment is denied. By separate Order, the Court will set this matter down for trial.

**SO ORDERED.**

/s/(BMC)

_____
U.S.D.J.

Dated: Brooklyn, New York
November 18, 2009